## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BRADLEY BYRD,

     Plaintiff,

DISTRICT BOARD OF TRUSTEES
OF FLORIDA STATE COLLEGE AT
JACKSONVILLE,  DOUGLAS C.
BRAUER, an individual, DAVID
DAGENAIS, an individual, SANTOS
TORRES, an individual, and
PATRICIA CONWAY, an individual,

     Defendants.

_____/

Case No.: 3:24-cv-00378

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff, BRADLEY BYRD ("Mr. Byrd"), by and through his undersigned counsel, sues Defendants FLORIDA STATE COLLEGE AT JACKSONVILLE ("FSCJ"), DOUGLAS C. BRAUER, an individual, DAVID DAGENAIS, an individual, SANTOS TORRES, an individual, and PATRICIA CONWAY, an individual, and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Bradley Byrd is a person residing in St. Johns County, Florida and is a citizen of the United States.

2.      Florida State College at Jacksonville is a Florida State College institution under Florida Statutes §§ 1001.60(2) and 1000.21(5)(g), and pursuant to Florida Statute § 1001.63, is governed by The District Board of Trustees of Florida State College at Jacksonville ("FSCJ"), pursuant to Florida Statute § 1001.63, which includes "all the powers and duties of a body corporate, including the power […] to sue and be sued[.]"

3.      As a recipient of Federal financial assistance and as a public entity, FSCJ is subject to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), as amended, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act of 1990 ("Title II")

4.      All of the operations of FSCJ are a program or activity as defined by 29 U.S.C. § 794(b)(2)(a).

5.      Douglas C. Brauer is the Dean of Engineering & Industry at FSCJ.

6.      David Dagenais was the program manager for FSCJ's Aviation Maintenance Management program, and is also an FAA Designated Mechanical Examiner.

7.      Patricia Conway is the program secretary for FSCJ's Aviation Maintenance Management program.

8.      Santos M. Torres was an Aviation Program Instructor at FSCJ in its FSCJ's Aviation Maintenance Management program.

9.      Mr. Byrd brings this action for violation of his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), and 42 U.S.C § 1983 for violation of his civil rights under the First Amendment to the United States Constitution.

10.     This Court has subject-matter jurisdiction over this matter pursuant the U.S. Constitution, 42 U.S.C. § 1983, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).

11.     Venue is proper in this judicial district and division pursuant to 28 U.S.C § 1391(b). The unlawful acts complained of give rise to the claims herein occurred within this district and division.

## FACTS

12.     FSCJ offers an Associate in Science Degree in Aviation Maintenance Management. (the "AMM Program").

13.     Under the AMM Program, FSCJ offers an Aviation Maintenance Technology program ("AMT Program").

14.     The AMT Program must comply with 14 C.F.R. §147.

15.     Under the AMT Program, FSCJ offers a twenty-month technical certificate program ("Aviation Maintenance Technical Certificate Program") that FSCJ represents "prepares students for entry into the aviation maintenance industry[,]" and that its "[c]lasses are approved by the Federal Aviation Administration (FAA) and, upon completion, students are eligible to take the

FAA written, oral and practical exams for the FAA Mechanic Certification with the Airframe rating."

16.     The Aviation Maintenance Technical Certificate Program classes are held at the FSCJ Cecil Center, which is FSCJ's campus that houses its Aviation and Commercial Vehicle Driving Programs.

17.     In January of 2021, Mr. Byrd enrolled in FSCJ's Aviation Maintenance Technical Certificate Program.

18.     In 2016, Mr. Byrd sustained severe injuries from a motorcycle accident, which caused open traumatic fractures in his lower left leg and foot, and severed tendons and nerves in his lower left leg and foot.  These injuries cause Mr. Byrd to suffer from excruciating and debilitating nerve pain along with widespread paresthesia in his lower left leg and foot, which is exacerbated by fabric touching the lower part of his leg.  As such, Mr. Byrd frequently wears shorts to alleviate his chronic pain.

19.     After the start of the Aviation Maintenance Technical Certificate Program in 2021, Mr. Byrd was informed that there was a dress code in place for the Aviation Maintenance Technical Certificate Program that purportedly required Mr. Byrd to wear long pants at all times, even in classroom environments.

20.     Mr. Byrd had not been made aware of this prior to enrollment in the Aviation Maintenance Technical Certificate Program.

21.     On or about May 13, 2021, Mr. Byrd sent Patricia Conway a courtesy email to give her a heads up that he intended to request accommodations from FSCJ for a reprieve from the dress code due to his disabilities, but would continue to comply with the appropriate uniform until such a time as an accommodation was granted.

22.     However, Conway approached Mr. Byrd in the lunchroom later the same day, began to confront Mr. Byrd regarding his personal medical information in front of his peers and others, and stated to him, "we don't care what accommodations the school gives you, this is our program and we don't have to honor it."

23.     Despite this, Mr. Byrd submitted a request for accommodations to FSCJ under the Americans with Disability Act of 1990.

24.     On May 18, 2021, he also emailed the FSCJ general information email address and requested an organizational chart for FSCJ.

25.     On May 20, 2021, Mr. Byrd contacted Dr. Sherri Litt, the Associate Provost for Baccalaureate and Career Educations at FSCJ, by email because he wanted to report concerns regarding safety, ethics and academics that he had regarding the Aviation Maintenance Technical Certificate Program.  In this email, Mr. Byrd expressed that he wanted to make certain that he was contacting the correct individual in the organizational scheme.  Mr. Byrd further request anonymity as he was fearful of retaliation.

26.     Dr. Litt responded the same day, and informed Mr. Byrd that the head of the Aviation Maintenance Technical Certificate Program was Dean Brauer, with whom she could set up a meeting, or alternatively, she could schedule a time for Mr. Byrd to speak directly to her.

27.     Mr. Byrd thanked her and gave her further details that that he was concerned about, including ethical issues with the financial structure of the Aviation Maintenance Technical Certificate Program.

28.     Dr. Litt responded on May 21, 2021 that she would have Dean Brauer contact Mr. Byrd to schedule a meeting.

29.     Dean Brauer later reached out to Mr. Byrd and scheduled a telephone conference with himself and Mr. Byrd for May 24, 2021.

30.     On May 21, 2021, FSCJ's Department of Student Services issued a memorandum granting Mr. Byrd certain reasonable accommodations under the Americans with Disability Act of 1990. The May 21, 2021 Accommodation Memorandum is attached hereto as Exhibit "1".  The May 21, 2021, Accommodation Memorandum only required that he wear pants "while welding or cutting or forming sheet metal."

31.     On May 24, 2021, Mr. Byrd detailed all of his concerns to Dean Brauer and emphasized that he had requested anonymity due to his fear of retaliation.  Dean Brauer did not have information to relay back at this time,

except for that despite Mr. Byrd's request for anonymity, he had already shared

Mr. Byrd's complaints and name with David Dagenais.

32.    On May 25, 2021, Mr. Byrd sent a follow up email to Dean Brauer

detailing his concerns.  Particularly, Mr. Byrd raised concerns that certain staff in the

Aviation Maintenance Technical Certificate Program were improperly receiving

financial benefits, and that this raised "possible anti-trust, anti-competitive, and

financial aid related issues."  Mr. Byrd's May 25, 2021 Email is attached hereto as

Exhibit "2" and is fully incorporated herein.

33.    Dean Brauer scheduled a follow up call with Mr. Byrd for June 2,

2021.

34.    On June 2, 2021, Mr. Byrd was unable to reach Dean Brauer at the

scheduled time and did not hear back from him for the rest of the day.

35.    On June 3, 2021, Mr. Byrd emailed Dean Brauer regarding the

missed meeting.

36.    On June 9, 2021, Mr. Byrd emailed Kristine Hubbard, Director of

Financial Aid at FSCJ regarding potential financial aid fraud in the potential amount

of 6 to 7 figures.

37.    On June 16, 2021, Hubbard informed Mr. Byrd that she would provide

him with as much anonymity as possible.

38.    On July 5, 2021, Mr. Byrd emailed the FAA Orlando Flight Standard

District Office ("FSDO") to with concerns regarding a program under 14 C.F.R. §

147 he was enrolled in, particularly a lack of hours of actual instruction, and to inquire about the standards.

39.     On July 12, 2021, an FAA Aviation Safety Inspector with the FAA Orlando FSDO replied to Mr. Byrd and informed him based upon the details as alleged by Mr. Byrd, the Aviation Maintenance Technical Certificate Program instruction was "unacceptable for any FAA Part 147 School" and requested further information for investigatory purposes.

40.     On July 12, 2021, Mr. Byrd emailed Dean Brauer as he had not addressed any of his previous complaints.  He noted that for three consecutive days in the Aviation Maintenance Technical Certificate Program, the classes received zero instruction from the professor, students were sleeping, watching movies, and playing computer games.  Mr. Byrd also provided Dean Brauer his earlier email to the FAA and the FAA's response acknowledging that this was unacceptable.

41.     On July 14, 2021, Mr. Byrd filed a formal complaint with the FAA and providing further requested information.

42.     On July 20, 2021, Mr. Byrd emailed Dean Brauer again to inform him that the class again had four hours without instruction.  He also informed Dean Brauer that an FAA inspector had showed up later in the day and that Mr. Byrd spoke with him about the situation and alerted him to the written complaint he had submitted to the FAA a week prior.

43.     Upon information and belief, Dean Brauer shared with David Dagenais and Santos Torres Mr. Byrd's complaints to the FAA, despite Mr. Byrd requesting anonymity.

44.     The next day, on July 21, 2021, Mr. Byrd was informed by Santos Torres that David Dagenais had directed the Aviation Maintenance Technical Certificate Program instructors to no longer honor Mr. Byrd's ADA accommodations. Mr. Byrd objected and the instructor informed him that his accommodations would no longer be allowed.

45.     Mr. Byrd left the campus to address the issue with student services, and then returned to the campus to continue the daily instruction, with pants on, while waiting for student services to assist in resolving the issue.

46.     However, upon his return, Mr. Byrd was informed by David Dagenais and Santos Torres that that he was being dismissed from the Aviation Maintenance Technical Certificate Program for being a "disruption".  Mr. Byrd objected and stated that he was not causing a disruption in the classroom, and that any disruption was simply Mr. Byrd emailing complaints to FSCJ administration and others. David Dagenais replied to Mr. Byrd that "disruption doesn't just mean disruption in class."

47.     David Dagenais and Santos Torres then had Mr. Byrd detained by campus security and trespassed from campus, in front of his classmates and peers.

48.     David Dagenais further informed Mr. Byrd that if he returned to campus he would have him arrested.

49.     Santos Torres acknowledged that Mr. Byrd's complaints regarding problems with the Aviation Maintenance Technical Certificate Program and the Progam's refusal to acknowledge his ADA accommodations was making other students voice dissatisfaction with the program, and that this was what he and David Dagenais considered Mr. Byrd to be a disruption.  He further acknowledge that and he and Dagenais were fearful that other students would start to "follow suit".

50.     The same day Mr. Byrd emailed Hubbard to inform her that he had been dismissed from the Aviation Maintenance Technical Certificate Program and removed from the premises in retaliation for whistleblowing and for requesting ADA accommodations to which David Dagenais and Santos Torres objected. Hubbard informed Mr. Byrd that this was an academic matter and that he needed to contact Dr. Wall, the Provost & VP of Academic Affairs.

51.     On July 21, 2021, Mr. Byrd also emailed Dr. Brauer and Sheri Litt to inform him of his dismissal from the Aviation Maintenance Technical Certificate Program, expulsion from campus, and to express his concerns that he was being retaliated against for whistleblowing to FSCJ's administration and to the FAA. Dr. Brauer responded that he was aware of what had happened and that he would be in touch to advise Mr. Byrd of his options.

52.     On July 23, 2021, Mr. Byrd submitted a formal complaint to FSCJ's College Equity Officer for ADA violations, and retaliation, pursuant to APM FSCJ 02-1303.

53.     While Mr. Byrd was dismissed from the Aviation Maintenance Technical Certificate Program, upon information and belief, Santos Torres, at the direction of David Dagenais, wrote "kicked out" next to Mr. Byrd's name on the Aviation Maintenance Technical Certificate Program roster, which was posted for all persons to view on the door to one of the instruction areas. Santos Torres further projected Mr. Byrd's personal data, and complaints about Mr. Byrd onto a large overhead projector for all of Mr. Byrd's peers and others inside the hangar to see.

54.     As a direct and foreseeable consequence of these acts, Mr. Byrd suffered from reputational injury, and suffered embarrassment and shame.

55.     On August 2, 2021, Mr. Byrd submitted a formal complaint to Dr. Litt pursuant to FSCJ's APM No. 11-0603, Student Complaint Processes, alleging that FSCJ had violated his ADA and student rights by not being advised of his right to a hearing and being allowed to present witnesses, and violation of his ADA rights.

56.     On August 4, 2021, Dean Brauer emailed Mr. Byrd a disciplinary warning to comply with the classroom/shop attire, and informed him that he was required to sign it in order to return to the Aviation Maintenance Technical

Certificate Program.  The written warning also noted that FSCJ had clarified his accommodations.

57.     Mr. Byrd objected to the written warning by email, as he had concerns that the amount of time he had been removed from the Aviation Maintenance Technical Certificate Program put him outside the allowed number of hours per FAA rules and regulations.  He also wanted notification of his alleged misconduct, and requested a due process hearing in accordance with FSCJ APM 11-0601.  Mr. Byrd also noted that he was not being provided with notice of his alleged violation, noting that if it was wearing pants in the hangar, his ADA accommodation gave him permission to do so.

58.     Mr. Byrd never received his requested due process hearing.  Mr. Byrd also never received a response from anyone at FSCJ regarding any of his complaints, exhibiting the Defendants deliberate indifference to Mr. Byrd.

59.     After Mr. Byrd sent the email objecting to the purported written warning, FSCJ's Department of Student Support Services issued an August 4, 2021, ADA accommodation memorandum to Mr. Byrd, stating that he must wear pants at all times while in the Hangar except when walking through to other areas.  This ADA accommodation is significantly different from the May 21, 2021, Accommodation Letter.

60.     On August 4, 2021, Mr. Byrd requested an appeal of his accommodations.  He asserted that the decision that the hangar was an

inherently unsafe place to wear pants was unreasonable, and requested that a qualified individual make a determination as to what dangers were present that could only be mitigated by wearing pants, and whether said dangers were such that the risk outweighed any reasonable accommodation.  Mr. Byrd offered to pay for the services of a qualified individual to conduct the audit so FSCJ would not incur the additional expenses.  Mr. Byrd's appeal of the August 4, 2021 accommodation is attached hereto as Exhibit "3".

61.     On September 7, 2021, FSCJ granted Mr. Byrd additional accommodations that were addressed in his accommodations appeal request, primarily the labeling of areas in the hangar that were to be considered deemed a safety risk for shorts.

62.     Mr. Byrd was able to make up the time that he missed due to his dismissal from the Aviation Maintenance Technical Certificate Program, but the level of instruction received was not what Mr. Byrd would have received had he not been dismissed, was not at the level of what was required by 14 C.F.R. § 147, was not the time required by the FAA to sit for the FAA exams, or sufficient to prepare Mr. Byrd for the FAA exams.

63.     Mr. Byrd understood that if he continued to submit complaints to FSCJ and the FAA regarding the Aviation Maintenance Technical Certificate Program, and the failure to abide by the ADA accommodations, that he would continue to be retaliated against by FSCJ, Dean Brauer, David Dagenais, Santos

Torres and other instructors in the Aviation Maintenance Technical Certificate Program.

64.     Indeed, Mr. Byrd finished the fall semester of the Aviation Maintenance Technical Certificate Program, but continued to be harassed and mocked by Dagenais and Conway for his disability, and for his submittal of additional complaints and concerns to FSCJ.

65.     David Dagenais and Santos Torres made clear to Mr. Byrd, in front of his peers, that he was unwelcome in their program.

66.     The harassment continued unabated until Mr. Byrd decided he could no longer continue in the Aviation Maintenance Technical Certificate Program, culminating in his constructive expulsion from the Aviation Maintenance Technical Certificate Program.

## **CAUSES OF ACTION**

### **Count I: Violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (Against FSCJ)**

67.     Mr. Byrd reincorporates the allegations of paragraphs 1 though 66 as if set forth fully herein.

68.     Mr. Byrd is qualified individual protected under the ADA.

69.     The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"

and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."

70.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

71.     Mr. Byrd was qualified to participate in the FSCJ Program.

72.     Defendant FSCJ is a public entity within the meaning of the ADA.

73.     Defendants discriminated and took adverse action against Mr. Byrd by reason of his disability, by publicly discussing his disabilities and private medical information, mocking and harassing Mr. Byrd, refusing to respect Mr. Byrd's granted accommodations, denying Mr. Byrd the opportunity to participate in the Program to the same extent as other qualified students, and disciplining Mr. Byrd.

74.     Mr. Byrd has suffered damages by reason of Defendants' discrimination.

75.     FSCJ is liable to Mr. Byrd pursuant to Title II of the ADA, 42 U.S.C. § 12132.

76.     Under the ADA, Mr. Byrd is entitled to attorneys' fees and costs as appropriate and permitted by law, pursuant to 42 U.S.C. § 12205.

**Count II: Violation of Section 503 of the ADA, 42 U.S.C. §12203**
**(Retaliation and Intimidation)**
**(Against FSCJ, Dagenais, Torres, and Conway)**

77.     Mr. Byrd reincorporates the allegations contained in paragraphs 1 through 66 as if set forth fully herein.

78.     Mr. Byrd is a qualified individual with a disability protected under the ADA.

79.     Defendants retaliated against and intimidated Mr. Byrd in violation of Section 503 the ADA, for asserting Mr. Byrd's rights to a reasonable accommodation for his disability.

80.     Requesting a reasonable accommodation from FSCJ, as Mr. Byrd repeatedly did, is a protected activity under the ADA, as is reporting violations of the ADA.

81.     In response to Mr. Byrd's continued advocacy for reasonable accommodations, Defendants responded by mocking his disability in front of his peers, publicly disclosing Mr. Byrd's personal and personal medical information, removing Mr. Byrd from the FSCJ program, having him detained in front of his peers, threatening to have him arrested him for trespass, issued him a formal disciplinary warning, and continued to harass him unabated in the educational environment.

82.     Defendants are liable to Mr. Byrd pursuant to 42 U.S.C. §12203.

83.     Mr. Byrd has suffered damages by reason of Defendants' retaliation and intimidation.

84.     Mr. Byrd is entitled to attorneys' fees and costs as appropriate and permitted by law, pursuant to 42 U.S.C. § 12205.

**<u>Count III: Violation of Section 504 of The Rehabilitation Act of 1973,</u>**
**<u>29 U.S.C. § 794 ("Rehabilitation Act")</u>**
**<u>(Against FSCJ)</u>**
**<u>(Plead in the Alternative)</u>**

85.     Mr. Byrd reincorporates the allegations contained in paragraphs 1 through 66 as if set forth fully herein.

86.     Mr. Byrd is a qualified person with a disability under Section 504.

87.     Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States...shall, solely by reason of [their] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

88.     FSCJ receives Federal financial assistance.

89.     Defendants discriminated against and excluded Mr. Byrd from participation in the Program solely by reason of his disability, by publicly discussing his disabilities and private medical information, mocking and harassing Mr. Byrd, refusing to respect Mr. Byrd's granted accommodations, denying Mr. Byrd the opportunity to participate in the Program to the same extent as other qualified students, and disciplining Mr. Byrd.

90.     FSCJ is liable to Mr. Byrd pursuant to 29 U.S.C. § 794.

91.     Mr. Byrd has suffered damages by reason of Defendants' retaliation and intimidation.

92.    Mr. Byrd is entitled to attorneys' fees and costs as appropriate and permitted by law, pursuant to 29 U.S.C. §794(a).

**Count IV: Violation of Section 504 of The Rehabilitation Act of 1973,
29 U.S.C. § 794  ("Rehabilitation Act") (Retaliation)
(Against FSCJ)
(Plead in the Alternative)**

93.    Mr. Byrd reincorporates the allegations contained in paragraphs 1 through 66 as if set forth fully herein.

94.    Mr. Byrd is a qualified person with a disability under Section 504.

95.    Defendants retaliated against and intimidated Mr. Byrd in violation of the Rehabilitation Act, for asserting Mr. Byrd's rights to a reasonable accommodation for his disability.

96.    Requesting a reasonable accommodation from FSCJ, as Mr. Byrd repeatedly did, is a protected activity under the Rehabilitation Act, as is reporting violations of the Rehabilitation Act.

97.    In response to Mr. Byrd's continued advocacy for reasonable accommodations, Defendants responded by mocking his disability in front of his peers, publicly disclosing Mr. Byrd's personal and personal medical information, removing Mr. Byrd from the FSCJ program, having him detained in front of his peers, threatening to have him arrested him for trespass, issued him a formal disciplinary warning, and continued to harass him unabated in the educational environment.

98.    FSCJ is liable to Mr. Byrd under 29 U.S.C. §794.

99.    Mr. Byrd has suffered damages by reason of Defendants' retaliation and intimidation.

100.    Mr. Byrd is entitled to attorneys' fees and costs as appropriate and permitted by law, pursuant to 29 U.S.C. §794(a).

### Count V: Violation of the First Amendment to the United States Constitution under 42 U.S.C. § 1983
**(Retaliation)**
**(Against FSCJ and Dagenais)**

101.    Mr. Byrd reincorporates and realleges by reference the allegations of paragraphs 1 through 66, as though fully alleged herein.

102.    The First Amendment of the United States Constitution protects the freedom of speech, which includes the right "to petition the Government for a redress of grievances."

103.    The right to petition the government is broad, and extends to all departments and arms of the government.

104.    Submitting complaints regarding allegations of illegal and unethical conduct is protected activity under the First Amendment.

105.    Mr. Byrd's complaints to FSCJ and the FAA regarding FSCJ's program not meeting the requirements of 14 C.F.R. § 147, and Mr. Byrd's complaints regarding the unethical and illegal financial schemes of the Programs' Designated Mechanic Examiners constituted protected speech.

106.    FSCJ, Brauer, Dagenais and Torres retaliated against Mr. Byrd for his protected speech by among other things, removing him from the Program, having Mr. Byrd illegally detained, issuing formal disciplinary action against Mr. Byrd, and harassing Mr. Byrd.

107.    The retaliatory actions of Defendants were the direct result of Mr. Byrd exercising his First Amendment rights.

108.    The actions of Defendants violated Mr. Byrd's established statutory and Constitutional rights of which the Defendants were aware. All Defendants understood clearly that their actions violated Mr. Byrd's rights.

109.    Mr. Byrd has been damaged by reason of Defendants' retaliatory actions.

110.    Mr. Byrd is entitled to attorneys' fees and costs as appropriate and permitted by law, pursuant to 42 U.S.C. § 1988.

### Count V: Declaratory Judgment, 28 U.S.C. § 2201
**(Against all Defendants)**

111.    Mr. Byrd reincorporates and realleges by reference the allegations of paragraphs 1 through XXX, and Counts I through V, as though fully alleged herein.

112.    An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that Mr. Byrd contends that Defendants violated his rights not to be subjected to discrimination, harassment and retaliation in violation of 42 U.S.C. § 12132, 42 U.S.C. §12203, 29 U.S.C. § 794, and the First Amendment to the United States Constitution.

113.    Mr. Byrd seeks a judicial declaration of the rights and duties of the respective parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Bradley Byrd respectfully requests that this Court:

A. Enter a judgment for nominal and compensatory damages in favor of Mr. Byrd against Defendants for violations the Americans with Disabilities Act in an amount to be determined at trial, plus reasonable attorney's fees pursuant to 42 U.S.C. § 12205;

B. Enter a judgment for nominal and compensatory damages in favor of Mr. Byrd against Defendants for violations the Rehabilitation Act in an amount to be determined at trial, plus reasonable attorney's fees pursuant to 29 U.S.C. §794(a);

C. Enter a judgement for nominal, compensatory and punitive damages in favor of Mr. Byrd against Defendants for Violations of the First Amendment to the United States Constitution in an amount to be determined at trial, plus reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

D. Enter declaratory judgment that the practices complained of in this complaint are unlawful and violate the Americans with Disabilities Act, the Rehabilitation Act, and the First Amendment to the United States Constitution;

E.  Enter an award of costs and expenses against all Defendants;  and

F.  Grant Mr. Byrd such other and further relief as may be just and proper.

## JURY DEMAND

Mr. Byrd respectfully demands a trial by jury on all issues so triable.

Respectfully submitted this 19th day of April, 2024.

**JOHN D. WEBB, P.A.**

*s/ John D. Webb*
John D. "Jack" Webb
Florida Bar Number: 0051871
1662 Stockton St., Ste. 201
Jacksonville, Florida 32204
Telephone: (904) 803-4686
Primary Email:
jwebb@jackwebblaw.com
Secondary Email:
arichey@jackwebblaw.com
kvarnes@jackwebblaw.com