UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRADLEY BYRD,

    Plaintiff,

v.

                                  Case No. 3:24-cv-378-TJC-LLL

DOUGLAS BRAUER, an individual,
DISTRICT BOARD OF TRUSTEES
OF FLORIDA STATE COLLEGE
AT JACKSONVILLE, SANTOS
TORRES, an individual, PATRICIA
CONWAY, an individual, and
DAVID DAGENAIS, an individual,

    Defendants.

## O R D E R

**THIS CASE** is before the Court on Defendants Douglas Brauer and David Dagenais's Motion to Dismiss Count V of Plaintiff's Amended Complaint.[1] Doc. 29. Defendants claim Plaintiff, Bradley Byrd, has failed to state a claim for relief and that Dagenais and Brauer are entitled to qualified immunity.

---

[1] Counts I through IV allege discrimination and retaliation claims. The other defendants are the District Board of Trustees of Florida State College at Jacksonville; Santos Torres, former Aviation Program Instructor; and Patricia Conway, Program Secretary for Aviation Maintenance Program. Count V is the only claim against Brauer. Count II is the only other claim against Dagenais.

## I. STANDARD

For purposes of the motion to dismiss, the Court accepts Byrd's well-pleaded facts as true. See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.").

## II. FACTS

Byrd enrolled in the Aviation Maintenance Technical Certificate Program offered by Florida State College at Jacksonville ("FSCJ") in January 2021. Doc. 26 ¶¶ 15, 17. Brauer was the Dean of Engineering & Industry, and Dagenais managed the aviation program. Id. ¶¶ 5–6. Students who complete the twenty-month program are eligible to seek Federal Aviation Administration ("FAA") Mechanic Certification within two years, but the separate FAA certification is not required. Id. ¶ 15.

According to FSCJ's student aviation handbook, students who want the FAA certification are responsible to make arrangements, including selecting and paying an examiner, but FSCJ would make its qualified instructors available as examiners. See Doc. 26-2. The actual process, however, was that the FAA certification fees were automatically added to FSCJ's tuition and FSCJ

2

arranged the FAA certification testing.[2] See id.; Doc. 26 ¶¶ 27, 32. Byrd objected, alleging this prevented him from choosing the examiner or negotiating fees. Id. Byrd also voiced concerns the arrangement posed a conflict of interest and was perhaps fraudulent or unethical.[3] See Doc. 26 ¶¶ 25, 27, 32, 39; Doc. 26-2.

In May 2021, Byrd started complaining.[4] See Doc. 26 ¶ 25. Byrd discussed his ethical and conflict of interest concerns with Brauer, who shared the concerns with Dagenais. Id. ¶¶ 25–32. Byrd also complained to Brauer about poor instruction, including class time spent watching movies and playing computer games. Id. ¶ 56. The next month, Byrd raised concerns about fraud and conflict of interest to FSCJ's financial aid office. See id. ¶ 39. The next month, Byrd complained to the FAA's Orlando Flight Standard District Office. Id. ¶¶ 53, 57.

Shortly after Byrd's first complaint, FSCJ's Equity Office received an anonymous student complaint about Byrd. Id. ¶ 41. Byrd believes Dagenais

---

[2] Byrd alleges the extra tuition payments for FAA certification were a windfall to FSCJ, because not all students in the aviation program sought FAA certification. See Doc. 26 ¶ 49.

[3] Dagenais was a FAA examiner used by FSCJ for the FAA certification. See id. ¶ 6.

[4] Byrd's multiple complaints, made over the next several months, are summarized here, with more detail in the Amended Complaint for Damages and Demand for Jury Trial. See Doc. 26.

(and perhaps others) solicited the anonymous complaint. Id. ¶¶ 40–41. The anonymous complaint lacked sufficient detail to investigate, and the Equity Office suggested it be addressed by the aviation program, which involved Brauer and Dagenais. See id. ¶¶ 44, 47. Brauer and Dagenais advocated internally for Byrd to be disciplined based on the anonymous complaint and solicited other complaints about Byrd, allegedly to undermine Byrd's credibility as the source of the FAA complaint. See id. ¶¶ 54, 62–63, 78–79.

Each complaint (to Brauer, financial aid office, and FAA) prompted its own response or investigation, but there was overlap. See id. ¶¶ 28, 43, 45–46, 55–64. For instance, Brauer shared information about the anonymous complaint with the person handling the financial aid investigation; Byrd shared his FAA complaint with Brauer; and Dagenais, allegedly close friends with the FAA investigator, worked with the FAA investigator to gather student input about Byrd. Doc. 26 ¶¶ 45, 56, 61, 62. Byrd alleges Dagenais improperly shared information with the FAA, violating privacy laws. Id. ¶¶ 79, 138.

During this same period, May 2021, Byrd requested and received an accommodation, which allowed him to wear short pants, unless "welding or cutting or forming sheet metal."[5] Id. ¶¶ 21, 30; Doc. 26-1. The accommodation

---

[5] The program generally required long pants. Doc. 26 ¶ 19. The accommodation request was made around May 13, 2021, due to Byrd's leg injuries from an earlier motorcycle accident. See id. ¶ 18.

specified if a "[p]rofessor encounters a specific activity that they feel full length pants must be worn to complete for safety, student will need to comply for safety, and this can be discussed further afterwards." Doc. 26-1. In July 2021, after Byrd had made at least three complaints, Dagenais told program instructors the accommodation would no longer be allowed. Doc. 26 ¶¶ 65–69. Byrd contacted student services about the accommodation issue and returned to the classroom in long pants. Id. ¶ 70.

Dagenais told Byrd he was dismissed from the program due to his disruptive behavior.[6] Id. ¶ 71. Dagenais allegedly submitted a false complaint to site security that Byrd had threatened him, resulting in campus security detaining Byrd and escorting Byrd off campus in front of classmates. See id. ¶¶ 72–73. At Dagenais's direction, "kicked out" was written next to Byrd's name on a publicly posted student roster and complaints about Byrd were also publicly projected within the training area. Id. ¶ 82.

Byrd complained again. Id. ¶ 85. FSCJ issued a written warning about Byrd's failure to comply with required attire, and stating Byrd could return to class (and make up missed class time) if he signed the warning. Id. ¶ 86. Byrd separately complained about the written warning. Id. ¶ 87. Byrd's accommodation was changed to generally require he wear pants, he appealed,

---

[6] The dismissal appears to have been temporary. See Doc. 26 ¶ 82.

and the accommodation was modified—but was more restrictive than before. Id. ¶¶ 89–94. Byrd completed the fall semester but alleges ongoing harassment, primarily from Dagenais, made it was clear he was not welcome in the program.[7] Id. ¶¶ 95–97. Accordingly, Byrd did not continue and did not complete the program. Id. ¶ 98.

## III. ANALYSIS

Count V of the Amended Complaint alleges Dagenais and Brauer retaliated against Byrd for exercising his free speech rights by making complaints. "To establish a First Amendment retaliation claim, the plaintiff must show 'first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech.'" Doe v. Valencia Coll. Bd. of Tr., 838 F.3d 1207, 1210–11 (11th Cir. 2016) (quoting Keeton v. Anderson-Wiley, 664 F.3d 865, 878 (11th Cir. 2011)). "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." Keeton, 664 F. 3d at 878 (quoting Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011)).

---

[7] Byrd alleges Dagenais, Torres, and Conway, all harassed him during the fall semester. Doc. 26 ¶¶ 96–97.

Both parties treat Byrd's complaints as "pure student speech" and apply the Tinker standard.[8] Doc. 29 at 10–12; Doc. 32 at 6. Under Tinker, "schools must tolerate such expression unless they can reasonably forecast that the expression will lead to 'substantial disruption of or material interference with school activities.'" Doe, 838 F.3d at 1211 (quoting Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 514 (1969)).

Dagenais and Brauer argue the claim against them should be dismissed because they have qualified immunity as government officials. Doc. 29. To establish qualified immunity, a government official must establish the act complained of was part of a discretionary function within his scope of authority. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). If established, plaintiff may overcome qualified immunity by showing: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Id. The Eleventh Circuit, applying Tinker, requires a court determine "two factors: (1) whether a student is engaged in expression (either pure speech or expressive conduct) and (2)

---

[8] Tinker considers "special characteristics of the school environment." Doe, 838 F.3d at 1211 (quoting Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506, (1969)). Pure student expression is "student expression that merely happens to occur on the school premises." Doe, 838 F.3d at 1211 (citing Bannon v. Sch. Dist. of Palm Beach Cnty., 387 F.3d 1208, 1213 (11th Cir. 2004)). Other types of student speech in the classroom are vulgar expression, government expression, and school-sponsored expression. Id.

whether the expression is having a non-negligible disruptive effect, or is likely to have such an effect, on classroom order or the educational process." Id. at 1278.

Byrd argues qualified immunity does not apply because some acts by Dagenais were not within the scope of his authority. Doc. 32. Byrd argues providing a false statement to law enforcement and sharing information protected by statute are illegal acts, and therefore could not be within the discretionary authority of Dagenais. Id. Byrd also argues Dagenais did not have authority to revoke the dress requirement accommodation nor dismiss Byrd from the program. Id.

Defendants argue Byrd fails to state a claim against them because Byrd has not shown his complaints were constitutionally protected or that he suffered an adverse action that would deter a person of ordinary firmness. Viewing the facts in the light most favorable to Byrd, he has a clearly established constitutional right to make internal and external complaints. See Doe, 838 F.3d at 1211-12 (vacating dismissal and finding student complaints should have been treated as "pure student expression" and were protected unless substantially disruptive or could reasonably lead to "material interference with school activities"); Castle, 631 F.3d at 1199 (noting the plaintiff/student's complaint about instructor was protected speech but affirming summary judgment because of legitimate basis for student suspension). Dagenais's and

8

Brauer's dismissal of Byrd from the program, soliciting false statements about Byrd, or their conduct in allegedly providing false information to law enforcement resulting in Byrd's removal from campus in front of others is sufficient to allege a causally related adverse action.[9]

Given the limited record at this procedural stage and the requirement to view facts in the light most favorable to Byrd, the Court agrees there are sufficient allegations to prevent dismissal of Count V as to Dagenais and Brauer based on qualified immunity. The Court emphasizes that this decision is based solely on the allegations of the Amended Complaint, taken as true on a motion to dismiss.

Accordingly, it is hereby

**ORDERED:**

1. Defendants Douglas Brauer and David Dagenais's Motion to Dismiss Count V of Plaintiff's Amended Complaint, Doc. 26, is **DENIED.**

---

[9] It is not necessary for the Court to decide if other alleged actions could be an adverse action.

2. No later than **May 23, 2025**, Defendants Brauer and Dagenais will answer Count V of the Amended Complaint.

**DONE AND ORDERED** in Jacksonville, Florida the 7th day of May, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

ddw
Copies:
Counsel of record

10